JUDITH P. ADAME *v.* OMAR R. ADAME

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 4—decided December 21, 1966

*Igor I. Sikorsky, Jr.,* for the appellant (defendant).

*Cornelius D. Shea,* with whom was *Cornelius J. Shea,* for the appellee (plaintiff).

House, J. The defendant has appealed from a judgment accepting a referee's report and granting the plaintiff a divorce on the ground of intolerable cruelty. The .defendant asserts three errors by the court in accepting the referee's report. The basic one is his claim that the court lacked jurisdiction to entertain the action. In addition, he assigns error in the acceptance of the report on the ground that the plaintiff presented no evidence to support the conclusion that the defendant's conduct was intolerable or that his conduct, in its cumulative effect, rendered the continuance of the marital relationship intolerable. The third claimed error is that the court accepted the referee's report "despite the fact that the uncontroverted evidence disclosed that, after the parties had separated, all of the defendant's efforts to effect a reconciliation were rebuffed by the plaintiff who refused and neglected to make any effort to preserve the marriage."

The referee found, as alleged in the complaint, that the plaintiff was domiciled in Connecticut at the time of the marriage and that, before institut-

ing the complaint, she returned to Connecticut with the intention of permanently residing here. In the absence of proof of this allegation of the complaint, the court would have no jurisdiction to grant the divorce. General Statutes § 46-15; *Mazzei* v. *Cantales,* 142 Conn. 173, 177, 112 A.2d 205.

The requisites of domicil are actual residence coupled with the intention of permanently remaining. *Mills* v. *Mills,* 119 Conn. 612, 617, 179 A. 5. The intention is a fact which must be found by the court; *Foss* v. *Foss,* 105 Conn. 502, 506, 508, 136 A. 98; *Gold* v. *Gold,* 100 Conn. 607, 610, 124 A. 246; and the intention must be to make a home at the moment, not to make a home in the future. *Rice* v. *Rice,* 134 Conn. 440, 447, 58 A.2d 523, aff'd, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957. We discussed the concept of domicil at length in *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 132 A. 902, where we noted that a domicil once acquired continues until another is established and that "[t]he law does not permit one to abandon, nor recognize an abandonment of, a domicil until another has been established." We also there quoted with approval (p. 179) from *Roxbury* v. *Bridgewater,* 85 Conn. 196, 201, 82 A. 193, that "[a] change of domicil is a question of 'act' and 'intention,'" and from Story, Conflict of Laws (5th Ed.) § 44 as follows: "Two things, then, must concur to constitute domicil; first, residence; and secondly, the intention of making it the home of the party. . . . It is the fact, coupled with the intention of remaining there."

The evidence in the present case, as printed in the appendices to both briefs, supports the finding of the referee that the plaintiff was in fact domiciled in Connecticut at the time of her marriage. The finding that, before instituting the divorce action,

the plaintiff returned here with the intention of permanently remaining—which is but another way of stating that she reacquired her Connecticut domicil—is not contested.

There is no need to summarize all the evidence supporting the finding of domicil at the time of marriage; it suffices to note certain portions of it. The family homestead in Southington was the permanent home of the plaintiff through her childhood, school and college. She graduated from college in 1958 and thereafter lived at the homestead while she was working for an insurance company and attending business school. Later she was employed for a time in New York City, where she lived, as a nonresident taxpayer, either in a hotel or in an apartment, returning between jobs to the home in Southington. Her car was kept, as well as registered, in Connecticut. She lived with her mother in Southington from the spring until the fall of 1960. She paid her federal income taxes and her Connecticut Medical Service insurance and Blue Cross insurance from the family homestead address. Although she did vote in New York in the 1960 election, she "did not give up her legal domicile in Connecticut." In January, 1962, she returned to her home in Southington and was married in Farmington in February, 1962, to the defendant, a New York resident. After their marriage, they went to Mexico and South America on a honeymoon and thereafter lived in an apartment in New Rochelle, New York, which they had selected and leased prior to the marriage. We cannot say that on this evidence the trier could not reasonably and logically conclude that the plaintiff was in fact domiciled in Connecticut at the time of her marriage, and this finding, coupled with the uncontested finding of the reacqui-

sition of her domicil here prior to the bringing of the action, satisfied the jurisdictional requirements of § 46-15 of the General Statutes.

We find no merit in the two remaining assignments of error. There was evidence of acts of cruelty on the part of the defendant, and the referee could reasonably and logically conclude that it was "intolerable in the sense of rendering the continuance of the marital relation unbearable by . . . [her]." *VanGuilder* v. *VanGuilder,* 100 Conn. 1, 3, 122 A. 719; *Gowdy* v. *Gowdy,* 120 Conn. 508, 510, 181 A. 462. The very evidence on which the defendant relies to support his claim that a divorce should be denied because the plaintiff rebuffed his efforts at reconciliation supports the conclusion that the cruelty proven was intolerable to the plaintiff.

There is no error.

In this opinion the other judges concurred.